1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VC SELLERS RESERVE LLC, a Washington )
limited liability company, )
                                                )   No.
                            Plaintiff, )
                                                )   COMPLAINT
   v.                                     )
                                                )
CH2M HILL COMPANIES, LTD., an Oregon )
corporation, )
                                                  )
                          Defendant. )
_____)

## INTRODUCTION

COMES NOW, Plaintiff VC Sellers Reserve LLC, and for its complaint against Defendant CH2M HILL Companies, Ltd., states as follows:

## PARTIES

1.      Plaintiff, VC Sellers Reserve LLC ("VC Sellers"), is a Washington limited liability company with its principal place of business at 911 West 8th Ave., Suite 201, Anchorage, AK 99501. VC Sellers was formed on or about August 28, 2007, to serve as a vehicle for certain payments made by Defendant to former shareholders of VECO Corporation ("VECO").

2.      Bill Allen, then an oilfield service worker in his 20's, originally founded VECO in 1968. Over the next forty years, Bill Allen transformed VECO from a small, Alaskan oilfield

COMPLAINT - 1
Case No.

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400 FAX (206) 447-9700

1   services company into a global corporation with over 4,000 employees and $900 million in

2   annual revenue.

3         3.      Defendant, CH2M HILL Companies, Ltd. ("CH2M HILL"), is an employee-

4   owned, Oregon corporation with its principal place of business at 9191 Jamaica Street, in

5   Englewood, Colorado 80112. With over 19,000 employees and an estimated $4.5 billion in

6   annual revenue, CH2M HILL provides engineering, construction and operations services for

7   business and governments worldwide.

8         4.      Pursuant to a Stock Purchase Agreement (the "SPA") and other related

9   documents, CH2M HILL acquired all the VECO stock at a Closing that occurred on

10   September 7, 2007. Relevant portions of the voluminous SPA are attached hereto as Exhibit A.

11   Relevant portions of the Disclosure Letter, another document executed at Closing, are attached

12   hereto as Exhibit B. Capitalized terms in this complaint not otherwise defined carry the meaning

13   set forth in the SPA.

14         5.      Section 2.3 of the SPA provides that the Total Consideration paid by CH2M

15   HILL for the VECO stock was valued at $380,465,000. This figure consists of: a $350,000,000

16   Purchase Price; $15,000,000 payable in CH2M HILL stock; and the assumption of $15,465,000

17   in secured indebtedness against the VECO Alaska Building.

18         6.      Pursuant to Section 2.3(a) of the SPA, the $350,000,000 million Purchase Price

19   was payable as follows:

| | |
|---|---|
| Purchase Price: | $ 350,000,000 |
| Less: | |
|     Assumption of VECO Indebtedness: | $ 69,489,376 |
|     Holdback Amount: | $ 70,000,000 |
|     Purchase Price Adjustments: | $ 64,520,000 |
|     Subtotal: | $204,009,376 |
| Closing Payment (cash at Closing): | $ 145,990,624 |

COMPLAINT - 2
Case No.

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

## JURISDICTION AND VENUE

7.     Jurisdiction exists over this dispute pursuant to 28 U.S.C. §1332 because the matter in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs, and because there is complete diversity of citizenship between the Plaintiff and the Defendant.

8.     Venue is proper in this judicial district because the parties agreed, pursuant to Section 12.5 of the SPA, that, with the exception for certain matters outside the scope of this lawsuit, any action or proceeding seeking to enforce any provision of the SPA may be brought in the United States District Court for the Western District of Washington.

## THE VANKOR DISPUTE

9.     In June of 2006, Caspian VECO Ltd., a subsidiary of VECO, entered into a contract with HK "RosNeft" – NTC L.L.C. ("RosNeft"), a Russian corporation, whereby VECO agreed to design an oilfield for RosNeft in Russia (the "Vankor Contract").

10.     At the time of the Closing on September 7, 2007, and CH2M HILL's acquisition of the VECO stock, work under the Vankor Contract was ongoing, but payment from RosNeft was in arrears. The SPA refers to this arrearage as the Vankor Outstanding Balance. At Section 2.4(a) of the SPA, the parties stipulated that the Vankor Outstanding Balance totaled $29,754,689 as of July 31, 2007. This amount represented the "grossed up" amount owed for work performed by VECO during the months of April, May, June and July 2007; the term "grossed up" in this complaint refers to invoices for work performed, plus a Russian value added tax (VAT), plus certain commissions, and before credit for a deposit made by RosNeft at the inception of the Vankor Contract. In addition, the parties estimated that an additional $7 million was due on the Vankor Contract for work performed by VECO between August 1, 2007 and the Closing on September 7, 2007. Thus the Vankor Outstanding Balance, for purposes of the adjustments made at Closing, totaled $36,754,689.

COMPLAINT - 3
Case No.

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

11.     The treatment of the Vankor Contract, and in particular the Vankor Outstanding Balance, was a major element of the parties' negotiations leading up to the final version of the SPA that was signed at the Closing on September 7, 2007. The parties had previously agreed that, after giving effect to VECO's distribution of certain assets to its shareholders that CH2M HILL was not interested in acquiring, VECO as a whole – including the amount due from Vankor – was worth $350 million. This $350 million figure assumed that the Vankor Outstanding Balance was fully collectable. However, because of CH2M HILL's concerns regarding collectability of the Vankor Outstanding Balance, the parties agreed that that amount would be reduced from the effective Purchase Price, and that CH2M HILL would pass through to VECO's shareholders any payments that CH2M HILL actually received post-Closing from Vankor on account of pre-Closing invoices. This reduction in the effective Purchase Price was accomplished by keeping the nominal Purchase Price of the company at $350 million, and increasing the Purchase Price Adjustment (an adjustment consisting of a variety of liabilities that CH2M HILL would be assuming at Closing) by the amount of the Vankor Outstanding Balance. As the $350 million Purchase Price and the other components of the Purchase Price (i.e., the $69,489,376 in Closing Indebtedness and the $70,000,000 Holdback Amount) were fixed amounts, increasing the Purchase Price Adjustment by the $36,754,689 due at Closing on the Vankor Outstanding Balance had the effect of reducing the cash due to Sellers at Closing by that same $36,754,689.

12.     With work under the Vankor Contract still ongoing at the time of Closing, VECO and CH2M HILL recognized that the SPA needed to contain a protocol on how to apply payments from RosNeft for pre-Closing invoices and post-Closing invoices. For this reason, Section 6.4(a)(i) of the SPA provides in part that:

> To the extent that RosNeft or its applicable affiliate has indicated in connection with any such payment whether such payments should be credited in respect of invoices prior to the Closing Date or after the Closing Date, <u>such indication shall determine whether such payment is payable by Sellers or retained by CH2M HILL</u>. (Emphasis added.)

COMPLAINT - 4
Case No.

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

13.    Designating RosNeft as the party to decide how payments would be applied created a potential risk for VC Sellers that CH2M HILL, as the party then performing under the Vankor Contract, might encourage or otherwise influence RosNeft to designate payments as payments for post-Closing invoices. To prevent against this happening, Section 6.4(a)(i) of the SPA also provided:

> In the exercise of its Best Efforts to collect such amount, CH2M HILL shall not and shall cause VECO and its affiliates not to attempt to influence RosNeft or its Affiliate to attribute any payment to a specific invoice.

14.    The SPA also provided, in the next sentence of Section 6.4(a)(i), that "[n]otwithstanding the foregoing, CH2M HILL shall have no obligation to institute Proceedings for the collection of such amounts [the Vankor Outstanding Balance]."

15.    Moreover, the SPA specifically provided that CH2M HILL was not required to continue to perform any work on the Vankor Contract following Closing. Section 6.4(a)(vi), for example, provides that "CH2M HILL reserves the absolute right to cause VECO and its Affiliates to curtail or cease work in respect of the Vankor Contract ...." Thus, at any time after Closing, CH2M HILL was free to "drop tools" and cease performing under the Vankor Contract.

16.    After the Closing on September 7, 2007, CH2M HILL continued to work on the Vankor Contract and invoice RosNeft for CH2M HILL's post-Closing work up until approximately December 20, 2007. This was solely the decision of CH2M HILL, and all benefits from this post-Closing work was solely for the benefit of CH2M HILL. On information and belief CH2M HILL's post-Closing invoices for CH2M HILL's post-Closing work total approximately $17 million.

17.    On October 10, 2007, following several months of pre-Closing and post-Closing promises that such payment would be made, RosNeft paid CH2M HILL $11,269,680. This "grossed up" sum consisted of: a $1,243,605 credit from an initial deposit RosNeft had paid at the inception of the Vankor Contract; $1,529,401 for the Russian VAT; $383,425 in the form of

COMPLAINT - 5
Case No.

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

payment to Caspian VECO Ltd. ("ECV"), the VECO affiliate which was party to the Vankor Contract; and $9,356,853 of funds wired to CH2M HILL.

18.    This October 10, 2007 payment represented 60% of the invoices for April and May of 2007, as set forth in the "Act of Acceptance" – a document that specifically accepted the work performed during those months and approved payment therefore - signed by RosNeft. See Exhibit C attached hereto. This Act constitutes the "indication" contemplated by Section 6.4(a)(i) of the SPA that the October 10, 2007 payment was for a pre-Closing invoice.

19.    Despite the October 10, 2007 payment, payment from RosNeft under the Vankor Contract remained substantially in arrears. On October 12, 2007, therefore, representatives from CH2M HILL, VC Sellers (on behalf of the former shareholders of VECO) and RosNeft convened in Moscow to discuss the arrears.

20.    The October 12, 2007 Moscow meeting failed to resolve any issues related to the delivery of the oilfield design packages by, or payments to, VECO/CH2M HILL. Nevertheless, CH2M HILL continued to work on the Vankor Contract. CH2M HILL did not do so in order to collect pre-Closing invoices for the benefit of VC Sellers, but, rather, continued to work on the Vankor Contract because CH2M HILL believed that it would eventually be paid on its own post-Closing invoices.

21.    On November 26, 2007, RosNeft paid CH2M HILL $5,718,833 for the remaining balance of the invoices for April and May of 2007. This "grossed up" sum was comprised of: $872,364 in VAT paid to the Russian government; $212,261 retained by ECV; and $4,634,208 wired to CH2M HILL. Attached hereto as Exhibit D is the Act of Acceptance signed by RosNeft that corresponds to the November 26, 2007 payment and constitutes the indication contemplated by Section 6.4(a)(i) of the SPA that that payment was on account of a pre-Closing invoice.

22.    By letter dated December 20, 2007, CH2M HILL/VECO gave RosNeft notice of default under the Vankor Contract and thereafter cancelled all operations under the Vankor Contract.

COMPLAINT - 6
Case No.

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

23.     CH2M HILL has not received any other payment, consideration, or anything of value on account of the Vankor Contract except for the October 10, 2007 and November 26, 2007 payments totaling $16,988,513.

24.     CH2M HILL has refused to turn over to VC Sellers any portion of the October 10, 2007 or November 26, 2007 payments, as set forth by letter dated January 17, 2008 from Margaret McLean, as Vice President and Chief Legal Officer of CH2M HILL, to William Barstow, as manager of VC Sellers.  A copy of said letter is attached hereto as Exhibit E.

25.     CH2M HILL asserts that all of its post-Closing invoices were "out-of-pocket expenses" within the meaning of the first portion of Section 6.4(a)(i) of the SPA, which provides in part, as follows:

> Until the first anniversary of the Closing Date, but not thereafter, CH2M HILL shall cause VECO and the other Acquired Companies to use their Best Efforts to collect the Vankor Outstanding Balance.  Any amounts actually received by VECO or any of its Affiliates after the Closing Date up to the third anniversary of the Closing Date, but not thereafter, in respect of invoices included in the Vankor Outstanding Balance shall be paid (**net out-of-pocket expenses incurred by CH2M HILL in collecting such receivable,** including negotiations with Vankor relating to the repayment and satisfaction thereof…. (emphasis added)

26.     CH2M has an obligation to remit the October 10, 2007 and November 26, 2007 payments totaling $16,988,513 to VC Sellers pursuant to Section 6.4(a)(i) of the SPA, less a reasonable amount for out-of-pocket costs of collection, such as the October 12, 2007 trip to Russia.

**TAX BENEFIT OF WRITING OFF VANKOR OUTSTANDING BALANCE**

27.     Section 6.4(a)(iv) of the SPA addresses the possibility that the Vankor Outstanding Balance may be written off for Tax purposes, enabling CH2M HILL or its affiliates to receive a corresponding Tax benefit.  That section calls for the tax benefit, plus interest, to be made at the time the statute of limitations expires for the Tax period that the write-down is deducted (or if there is no statute of limitations, three (3) years from the time the Tax Return is filed that contains any such deductible) and the Tax benefit is realized.  Such Tax benefit is then

COMPLAINT - 7
Case No.

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

1  to paid to VC Sellers "net of expenses related to ... any efforts to collect the Vankor Outstanding

2  Balance."

3      28.    CH2M HILL is an accrual basis taxpayer and, upon information and belief, VC

4  Sellers alleges that CH2M HILL reported the amounts due on the Vankor Contract on CH2M

5  HILL's 2007 income tax returns for the United States, Canada, and other countries.  The exact

6  amount reported is unknown to VC Sellers at this time, but VC Sellers believes that the amount

7  is in the tens of millions of dollars.

8      29.    The entire scope of VECO/CH2M HILL's work contemplated under the Vankor

9  Contract was not completed when CH2M HILL delivered the Default Notice to RosNeft on

10  December 20, 2007.  Currently, it appears to both CH2M HILL and VC Sellers that the prospect

11  of any further collections from RosNeft under the Vankor Contract is remote.

12      30.    On information and belief, and in light of the fact that the Vankor Contract was

13  not completed when CH2M HILL cancelled that contract, VC Sellers believes that CH2M HILL

14  intends to deduct the entire amount due to VECO/CH2M HILL on the Vankor Contract as an

15  uncollectable bad debt on CH2M HILL's 2008 income tax returns.  This deduction will either

16  reduce CH2M HILL's tax obligations for 2008 or create a tax loss that can be carried forward or

17  backward to offset taxable income for other years.

18      31.    For the same reasons that the parties disagree as to whether "net out-of-pocket

19  expenses incurred by CH2M HILL in collecting" the Vankor Outstanding Balance for purposes

20  of SPA Section 6.4(a)(i) include all of CH2M HILL's post-Closing invoices, the parties disagree

21  as to whether "net of expenses related to ... any efforts to collect the Vankor Outstanding

22  Balance" include all of CH2M HILL's post-Closing invoices for purposes of Section 6.4(a)(iv)

23  of the SPA.

24      32.    Because the $16,998,513 collected post-Closing by CH2M HILL considerably

25  exceeds the "net out-of-pocket expenses incurred by CH2M HILL in collecting" the Vankor

26  Outstanding Balance and because there will be no remaining "expenses related to any efforts to

COMPLAINT - 8
Case No.

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

collect the Vankor Outstanding Balance," VC Sellers is entitled to declaratory judgment that the "expenses related to… any efforts to collect the Vankor Outstanding Balance" for purposes of Section 6.4(a)(iv) are zero.

## THE WASTEWATER PLANT DISPUTE

33. The $70 million Holdback Amount component of the Purchase Price was designed to protect CH2M HILL from a wide variety of potential liabilities or damages. The SPA therefore sets forth mechanisms whereby CH2M HILL could pay third-party claims asserted against VECO and charge those payments against the Holdback Amount. Alternatively, CH2M HILL could assert contingent claims against the Holdback Amount, in which case that portion of the Holdback Amount would not be distributed to VC Sellers until such claims were resolved.

34. $30 million of the $70 million Holdback Amount was payable to VC Sellers on the one-year anniversary of Closing ("First Year Anniversary Holdback Release"), with the balance payable three years after Closing. In addition, interest on the Holdback Amount was paid quarterly to VC Sellers, as set forth in Section 2.5(a) of the SPA. CH2M HILL's claims against the Holdback Amount were to be offset against the First Year Anniversary Holdback Release and/or against the balance due on the third anniversary, as set forth in Sections 2.5(b) and (c) of the SPA.

35. VECO's assets at the time of Closing included a wastewater treatment plant in Prudhoe Bay, Alaska (the "Wastewater Plant"). Prudhoe Bay, also sometimes referred to as Deadhorse, is a community which serves as a base for oil companies, numerous oilfield service providers and other contractors who conduct operations on Alaska's North Slope. The Wastewater Plant is utilized in conjunction with VECO's nearby camp facility, the Arctic Oilfield Hotel. Sewage and wastewater from the Arctic Oilfield Hotel is processed at the Wastewater Plant, and then discharged.

COMPLAINT - 9
Case No.

36.     On September 7, 2008, the one-year anniversary from Closing, CH2M HILL transmitted funds to VC Sellers which represented the $30 million First Year Anniversary Holdback Release, less accumulated claims against the Holdback Amount. The transmittal was accompanied by a letter claiming, among other things, that VECO failed to disclose the condition of the Wastewater Plant in the relevant schedules of the SPA. A copy of that letter is attached hereto as Exhibit F. In particular, CH2M HILL claims that the Wastewater Plant was at the end of its useful life at the time of the Closing Date and that VECO failed to identify the Wastewater Plant replacement costs in VECO's maintenance or capital budgets at the time of the Closing Date, in violation of Section 3.8 (Condition and Sufficiency of Assets) of the SPA.

37.     Because of this alleged breach of the SPA concerning the Wastewater Plant, CH2M HILL claimed a $4.83 million offset against the First Anniversary Holdback Release Payment. CH2M HILL claims that this amount is necessary to replace the Wastewater Plant with an entirely new wastewater treatment facility.

38.     Section 3.8 (Condition and Sufficiency of Assets) of the SPA – the sole provision of the SPA that CH2M HILL relied upon in claiming the $4.83 million offset against the First Anniversary Holdback Release – provides as follows:

> The buildings, plants, structures, and equipment of the Acquired Companies (except to the extent such assets are set aside for spare parts or abandoned and, in either case, not carried on the Balance Sheet or the Interim Balance Sheet or the relevant Joint Venture balance sheet provided to CH2M HILL, at a value in excess of reasonably estimated salvage value) are structurally sound, are in good operating condition and repair, and are adequate for the uses to which they are being put, and none of such buildings, plants, structures, or equipment is in need of maintenance or repairs subject to ordinary wear and tear and to maintenance and capital expenditures as contemplated by the maintenance and capital expenditure budgets of the Acquired Companies as prepared in the Ordinary Course of Business. The building, plants, structures, and equipment of the Acquired Companies are sufficient for the continued conduct of the Acquired Companies' businesses after the Closing in substantially the same manner as conducted prior to the Closing, subject to the exceptions set forth in the prior sentence. (Emphasis added.)

39.     The VC Sellers' general representations and warranties in Section 3 of the SPA are limited by, and subject to, various disclosures, which are attached to the Disclosure Letter

COMPLAINT - 10
Case No.

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

1    executed at Closing in connection with the SPA. For example, Section 3 of the SPA states that

2    "...except as set forth herein and in the Disclosure Letter, (a) VECO represents and warrants to

3    CH2M HILL that the statements made in this Section 3 are true and correct..."; the Disclosure

4    Letter states that "The representations and warranties of VECO and Sellers ... in Section 3

5    (*Representations and Warranties of VECO and Sellers*) of the Agreement are made and given

6    subject to the disclosures in this Disclosure Letter." A copy of the Disclosure Letter, without the

7    attached disclosures except for Disclosures 3.8 and 3.20, is attached hereto as Exhibit B.

8          40.    Thus, for example, <u>Disclosure 3.8</u> replaces the provisions of <u>Section 3.8</u> with

9    respect to the matters referenced in <u>Disclosure 3.8</u>, and CH2M HILL's reliance on <u>Section 3.8</u>

10    was entirely without merit.

11          41.    Disclosure 3.8, part of Exhibit B hereto, provides in full:

12         **3.8     Condition and Sufficiency of Assets**

13         <u>In Prudhoe Bay area, Alaska, some of the Facilities are beyond</u>
<u>what normally would be considered "their useful life" in other</u>

14         <u>locations.</u> Subsidence on permafrost, and other conditions in the
Arctic, makes the restoration or rehabilitation of some of the

15         Facilities prohibitively expensive, impractical and unnecessary.
Such Facilities are normally reassigned to another purpose or

16         function that is still useful. Typically, Facilities operating in harsh
conditions require a different standard of "ordinary, routine

17         maintenance." This disclosure does not modify the representations
and warranties of Sections 3.7 (d), (f), (g), 3.15 or 3.20 of the

18         Agreement. In addition, <u>notwithstanding this disclosure, the</u>
<u>Facilities located in Prudhoe Bay area, Alaska are sufficient for the</u>

19         <u>continued conduct of the Acquired Companies' businesses after the</u>
<u>Closing in substantially the same manner as conducted prior to the</u>

20         <u>Closing</u> as contemplated by the maintenance and capital
expenditure budgets of the Acquired Companies as prepared in the

21         Ordinary Course of Business, consistent with past practice.
(Emphasis added)

22

23          42.    The Wastewater Plant is one of the Facilities encompassed by the foregoing

   disclosure.

24

25

26

COMPLAINT - 11
Case No.

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400 FAX (206) 447-9700

43. Disclosure 3.8, as set forth above, refers to Section 3.7(d), (f), (g), 3.15 and 3.20 of the SPA. VECO has complied with those sections, to the extent that those sections have any application.

44. Section 3.7(d) of the SPA, for example, refers to zoning issues and has no application to this litigation.

45. Section 3.7(f) refers to legal uses of real property and similarly has no application to this litigation.

46. Section 3.7(g) of the SPA states, in relevant part, that:

> The Real Property is in a suitable condition for the Acquired Companies' business as currently conducted, subject to ordinary wear and tear and to necessary maintenance and capital expenditures as contemplated by the maintenance and capital expenditure budgets of the Acquired Companies as prepared in the Ordinary Course of Business.

47. VECO has complied with Section 3.7(g) of the SPA.

48. Section 3.15 of the SPA, "Compliance with Legal Requirements; Government Authorizations", requires that VECO identify all Governmental Authorizations and that each Acquired Company comply with those Governmental Authorizations. In Disclosure 3.15(b), VECO identified the State of Alaska, Department of Environmental Conservation and Permit No. 0136-DB011, which covers the Wastewater Plant.

49. Section 3.20 of the SPA, "Environmental Matters", requires that, except as set forth in Part 3.20 of the Disclosure Letter, each Acquired Company materially comply with Environmental Laws.

50. Part 3.20 of the Disclosure Letter refers to the Wastewater Plant, as follows:

### 3.20   Environmental Matters

North Slope Wastewater Treatment Plant:
Modified Wastewater Disposal Permit (Permit No. 0136-DB011), issued by Alaska Department of Environmental Conservation, effective January 29, 2007, expires October 6, 2007. VECO retained the Anchorage Office of CH2M HILL to prepare a renewal application. The permit was modified to increase the 30-day average volume limit because the plant

COMPLAINT - 12
Case No.

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

was exceeding the average, but still meeting water quality standards. In addition, VECO retained CH2M HILL in Spring 2007 to determine whether the treatment plant operators require Level 1 or Level 2 certification. In the interim, VECO is in the process of having the operators trained to Level 1.

51.     At the time of the Closing on September 7, 2007, the Alaska Department of Environmental Conservation (ADEC) permit No. 0136-DB011, which authorized up to 20,000 gallons per day (gpd) of discharge, was set to expire October 6, 2007. The permit was renewed through April 5, 2008, and ADEC subsequently issued another permit, No. AKG-57-0000, effective through March 9, 2009.

52.     Prior to Closing, at Closing, and through to this day, the Arctic Oilfield Hotel generates approximately 23,000 gpd of wastewater per day. An average of 15,000 gpd is processed at the Wastewater Plant and the approximately 8,000 gpd excess is trucked to the North Slope Borough waste water processing facility, which processes that waste for a fee. This was a reasonable and workable arrangement for VECO to dispose of its wastewater.

53.     The existing Wastewater Plant is approximately 28 years old, but it still performs its function well, and is not dissimilar in age, design or condition from other wastewater processing plants in the Prudhoe Bay area.

54.     The Wastewater Plant continues to serve the Acquired Companies' businesses in substantially the same manner as it had prior to the Closing, within the meaning of Disclosure 3.8.

55.     Upon information and belief, on or about November 7, 2008, the CH2M HILL board formally authorized the construction of an entirely new wastewater treatment facility that would have a processing capability of 25,000 gpd, as opposed to the 15,000 to 20,000 gpd currently processed by the Wastewater Plant.

56.     CH2M HILL decided to replace the Wastewater Plant not because the Wastewater Plant was insufficient for the continued conduct of CH2M HILL's business after the Closing, as compared to VECO's business prior to the Closing, within the meaning of Disclosure 3.8.

COMPLAINT - 13
Case No.

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

Instead, CH2M HILL decided to replace the Wastewater Plant because CH2M HILL desired to build a state-of-the-art wastewater treatment facility that would be a showcase for CH2M HILL's design and engineering expertise and which could process waste water at a lower overall cost than the existing plant. CH2M HILL was not required or pressured by ADEC or any other regulator to replace the existing Wastewater Plant.

57.     Even if this Court finds that condition of the Wastewater Plant does not meet the applicable condition and usage requirements of the SPA and Disclosure 3.8, CH2M HILL's claim of $4.83 million against the Holdback Amount is unreasonable because, among other things, (i) there are much less expensive means of bringing the existing plant into compliance, and (ii) the $4.83 million figure is for a brand new 25,000 gpd plant to replace a 28 year old 15,000 gpd plant, and fails to consider such factors as the salvage value of the old plant and the operating cost savings generated by the new plant.

## PENALTY INTEREST

58.     The SPA calls for CH2M HILL to pay interest on the Holdback Amount, and on certain other payments to VC Sellers, at the "Applicable Rate," a term defined as follows:

> "**Applicable Rate**" means, as of any date of determination, a per annum rate of interest equal to the sum of (x) 1.25% per annum, <u>plus</u> (y) the "Libor Rate" then in effect for "Libor Loans" having an "Interest Period" of one month, as set forth in *The Wall Street Journal*; provided however, that any payment due to be paid by any Party and not the subject of a good faith dispute between the Parties shall bear interest from the date such payment is due until the date of payment and receipt by the payee at a **default rate equal to the sum of the Applicable Rate in effect at the time such payment first became due <u>plus</u> 4% per annum. Any payment that is the subject of a good faith dispute among the Parties shall not bear interest at the default rate** unless and until such amount remains unpaid for three Business Days after the date such dispute is finally resolved. For purposes of interest accruing with respect to the Holdback Amount, such interest shall accrue from the Closing Date until February 1, 2008 at the Applicable Rate in effect on the Closing Date and thereafter shall be determined on each September 1 and February 1 until the full amount of the Holdback Amount is paid to Sellers or applied in respect of indemnification obligations of Sellers under this Agreement. (emphasis added)

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

59.    CH2M HILL's argument that each of its post-Closing billings falls within the "net of out-of-pocket costs of collecting" the Vankor Outstanding Balance within the meaning of Section 6.4(a)(i), is not a "good faith dispute" for purposes of determining whether the default rate of interest applies.

60.    CH2M HILL's argument that it is entitled to charge VC Sellers $4.83 million for a brand new wastewater plant because the existing plant violates Sections 3.8 and 3.20 of the SPA and Disclosure 3.8, is not a "good faith dispute" for purposes of determining whether the default rate of interest applies.

61.    VC Sellers is entitled to the default rate of interest, i.e., monthly LIBOR plus 1.25% plus 4%, on the portions of the Vankor Outstanding Balance and the $4.83 million for the new Wastewater Plant that this Court finds CH2M HILL should pay to VC Sellers.

## BREACH OF CONTRACT

62.    VC Sellers incorporates and realleges the preceding paragraphs by reference.

63.    The foregoing conduct of CH2M HILL in connection with the Vankor Dispute constitutes a breach of the SPA.

64.    As a result of CH2M HILL's breach of the SPA in connection with the Vankor Dispute, Plaintiff has been injured in the amount of $16,988,513, plus interest.

## BREACH OF CONTRACT

65.    VC Sellers incorporates and realleges the preceding paragraphs by reference.

66.    The foregoing conduct of CH2M HILL in connection with the Wastewater Plant Dispute constitutes a breach of the SPA.

67.    As a result of CH2M HILL's breach of the SPA in connection with the Wastewater Plant Dispute, Plaintiff has been injured in the amount of $4,830,000, plus interest.

## DECLARATORY JUDGMENT

68.    VC Sellers incorporates and realleges the preceding paragraphs by reference.

COMPLAINT - 15
Case No.

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700

69. A real and justiciable controversy exists between VC Sellers and CH2M HILL regarding amounts owed to VC Sellers pursuant to the SPA.

70. VC Sellers is entitled to a declaration that VC Sellers is entitled to any and all further amounts paid to CH2M HILL by RosNeft for work performed pursuant to the Vankor Contract prior to September 7, 2007.

71. VC Sellers in entitled to a declaration that "out-of-pocket expenses incurred by CH2M HILL in collecting" and "expenses related to ... any effort to collect" the Vankor Outstanding Balance, within the meaning of Sections 6.4(a)(i) and (iv), respectively, do not include amounts incurred by CH2M HILL for work performed by CH2M HILL pursuant to the Vankor Contract after September 7, 2007.

## RESERVATION OF RIGHTS

72. There are a number of other issues in contention between the parties with respect to the Holdback Amount and other payments due to VC Sellers under the SPA. For a number of reasons, VC Sellers has not included all of those issues in this complaint. However, VC Sellers reserves all its rights with respect to those issues, including the right to add those issues to this lawsuit if necessary.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

1. Judgment in favor of VC Sellers Reserve LLC and against CH2M HILL Companies, Ltd. in the amount of $16,988,513, plus default interest, in connection with the Vankor Dispute;

2. Judgment in favor of VC Sellers Reserve LLC and against CH2M HILL Companies, Ltd. in the amount of $4,830,000, plus default interest, in connection with the Wastewater Plant Dispute;

COMPLAINT - 16
Case No.

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400 FAX (206) 447-9700

3. A declaration that the "expenses related to… any efforts to collect the Vankor Outstanding Balance" for purposes of Section 6.4(a)(iv) of the SPA are zero;

4. A declaration that VC Sellers is entitled to any and all further amounts paid to CH2M HILL by RosNeft for work performed prior to September 7, 2007.

5. A declaration that "out-of-pocket expenses incurred by CH2M HILL in collecting," and "expenses related to … any effort to collect," the Vankor Outstanding Balance, within the meaning of SPA Sections 6.4(a)(i) and (iv), respectively, do not include amounts incurred by CH2M HILL for work performed by CH2M HILL pursuant to the Vankor Contract after September 7, 2007.

6. Any such other further or different relief that the Court deems just and equitable.

DATED this 23rd day of February, 2009.

FOSTER PEPPER PLLC

Jeremy R. Larson, WSBA No. 22125
Jason R. Donovan, WSBA No. 40994
Attorneys for Plaintiff
VC Sellers Reserve LLC
Foster Pepper PLLC
1111 Third Avenue, Suite 3400
Seattle, Washington 98101-3299
Phone: 206.447.4400
Fax: 206.447.9700
larsj@foster.com
donoj@foster.com

Cabot Christianson
Christianson & Sparker
911 West 8th Avenue, Suite 201
Anchorage, AK 99501
Phone: 907.258.6016
Fax: 907.258.2026
cabot@cslawyers.net
ecf@cslawyers.net

COMPLAINT - 17
Case No.

1

2    List of Exhibits

3    A      Stock Purchase Agreement (relevant portions)
      B      Disclosure Letter (relevant portions)
4    C      Act of Acceptance for October 10, 2007 payment
      D      Act of Acceptance for November 26, 2007 payment
5    E      Letter dated January 17, 2008 from CH2M to VC Sellers (relevant portions)
      F      Letter dated September 7, 2008 from CH2M to VC Sellers

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

COMPLAINT - 18
Case No.

FOSTER PEPPER PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299
PHONE (206) 447-4400  FAX (206) 447-9700