EXHIBIT E

EXHIBIT E

RECEIVED
JAN 2 2
CHRISTIANSON,   
& ~~~~~

CH2M HILL
9191 South Jamaica Street
Englewood, CO 80112-5946
Tel 303.771.0900
Fax 720.286.9250

CH2MHILL

January 17, 2008

*Holdback No. 6*

William Barstow
VC Sellers Reserve, LLC
911 West 8th Avenue, Suite 201
Anchorage, AK 99501

Dear Mr. Barstow:

This letter is being sent to you in your capacity as the Sellers' Representative pursuant to Section 6.4(b) of the Stock Purchase Agreement between CH2M HILL Companies, Ltd. ("CH2M HILL") and the various sellers identified therein (the "Sellers") dated September 7, 2007 (the "SPA"). The purpose of the letter is to update you about amounts received and due to the Sellers with respect to the contract between VECO Caspian and NK "Rosneft-NTC" LLC ("NTC"), a subsidiary of Russian oil company Rosneft, for the design of "DEVELOPMENT OF VANKOR GROUP OF FIELDS WITH OIL EXPORT TRANSPORTATION AND FACILITIES OF TIE-IN TRUNK OIL PIPELINES OF OJSC "AK "TRANSNEFT" ("Vankor Contract") for work performed prior to the Closing Date under the SPA. Unless otherwise indicated herein, capitalized terms used in this letter have the meaning set forth in the SPA.

As we previously discussed, on December 20, 2007, CH2M HILL delivered to NTC a Default Notice advising that VECO Caspian will drop tools unless NTC honors its obligations and makes all payments due under the Vankor Contract and establishes a workable process for timely review, approval and payment of all outstanding and future invoices ("Default Letter", see Exhibit 1 hereto). Without any references to our Default Letter, on December 24, 2008, NTC sent to VECO Caspian a Withdrawal of Scope notice which effectively terminated the Vankor Contract by withdrawing from VECO Caspian all scope of work and instructing VECO Caspian to (1) turn over all work in process to NTC by January 10, 2008, (2) provide estimates of the value of the scope withdrawn and (3) provide summary of costs for all work in process ("Scope Withdrawal Letter", see Exhibit 2 hereto). VECO Caspian advised NTC on January 7, 2008 that we consider the Scope Withdrawal Letter to be NTC's termination of the Vankor Contract and requested that NTC close out the contract in accordance with its terms by paying all outstanding invoices for work previously performed and work in process and compensating VECO Caspian for contract close-out expenses ("Acknowledgement of Termination Letter", see Exhibit 3 hereto). I note your letter of January 7, 2008 Notice of Disagreement regarding the December 31, 2007 Vankor Outstanding Balance payment. In anticipation of further information from NTC about the status of the Vankor Contract and the contract close-out payments, we delayed updating you on the Vankor matters, CH2M HILL's position regarding the payments collected from NTC in the first full quarter after Closing, and amounts due to the Sellers, if any. As no additional information has been received from NTC to date, the purpose of this letter is to address our obligations to the Sellers under Section 6.4 of the SPA[1].

Pursuant to Section 6.4 of the SPA, at least quarterly CH2M HILL is required to remit to you, as Sellers Representative, "amounts actually received . . . in respect of invoices included in the Vankor

---

[1] In a phone conversation with me on January 15, 2008, we agreed that this letter will be deemed compliant under the quarterly notice requirements of Section 6.4 of the SPA and that your deadline to comment or object to this letter shall be extended until February 1, 2008.

COPYRIGHT 2008 BY CH2M HILL, INC. • COMPANY CONFIDENTIAL

William Barstow
Page 2
January 17, 2008

Outstanding Balance . . . (net of out-of-pocket expenses incurred by CH2M HILL in collecting such receivable, including negotiations with Vankor relating to the repayment or satisfaction thereof, net of any unreimbursed Loss or liability incurred by CH2M HILL or any of its Affiliates in respect of claims arising in connection with the performance of the Vankor Contract prior to the Closing Date and net of all applicable Taxes (to the extent not accrued on the books of the Consolidated Acquired Companies as of the Closing Date), but without reduction for any payments accrued or paid prior to the Closing Date in respect of amounts due to subcontractors for work performed prior to the Closing Date on the Vankor Contract."

As set forth in detail on the spreadsheet attached hereto as Exhibit 4, during the fourth quarter of 2007, NTC made payments to CH2M HILL in the amount of US $15,744,908 and amortized US $1,243,605 of the advance prepayment, for total proceeds of US $16,988,513. Of such amount, US $2,401,766 was paid in VAT and Caspian VECO partner, ECC, retained US $595,686, resulting in actual receipt by CH2M HILL of US $13,991,061.

From the Closing Date until the contract was terminated by NTC in late December 2007, CH2M HILL incurred expenses of US $15,017,456 in our good faith effort to collect the Vankor Outstanding Balance. These costs include expenses and labor of CH2M HILL project personnel and executives who traveled to Russia to negotiate the resolution of the payment issue with NTC. Further, our costs of collection include the cost reasonably incurred by CH2M HILL to finalize the work product that was started prior to Closing but remained incomplete at Closing and which NTC instructed VECO Caspian to complete and turn over *as a pre-condition to* any further payments under the Vankor Contract. The aggregate payment of US $16,988,513, received in October and November of 2007, was received (as we previously advised you) in exchange for the delivery by CH2M HILL of design packages expressly designated by NTC. The work on these design packages, although started prior to Closing, was completed after Closing and it is our cost of completing these design packages that is included in the collection costs. Likewise, all costs incurred by CH2M HILL for work product not yet delivered to NTC was incurred on NTC's instruction and only because NTC represented to VECO Caspian that the completion of the work product is the condition precedent to any additional amounts of Vankor Outstanding Balance to be paid to VECO Caspian. The fact that it would now appear that NTC reneged on its commitments to make additional payments with respect to the Vankor Outstanding Balance does not change the fact that the costs in question were incurred by CH2M HILL in the process of collecting the Vankor Outstanding Balance for the Sellers' benefit. Therefore, we believe that the entire US $15,017,456 clearly constitutes expenses incurred in connection with CH2M HILL collection of Vankor Outstanding Balance, as CH2M HILL was reasonable to undertake the additional work and incurred expenses when it reasonably believed that such work is a prerequisite to NTC releasing further payments with respect to pre-Closing invoices and that NTC (based on representations made) would make such payments.

Further, because CH2M HILL has not been, and reasonably believes that it will not be, reimbursed by NTC for the labor, materials and other direct and indirect expenses incurred in delivering additional work under the Vankor Contract after Closing with respect to design packages that were due to the client under the Vankor Contract prior to Closing, such amounts also constitute a "Loss" incurred in connection with claims arising from work performed prior to the Closing Date. Consequently, since CH2M HILL's total costs of Vankor Outstanding Balance collections to date and/or Loss incurred with respect to claims arising from work performed prior to Closing exceed payments received from NTC (net of VAT), no payment is due to the Sellers as of December 31, 2007 in respect of the Vankor Outstanding Balance.

Please do not hesitate to contact me or Mike Brown with any questions you may have. We will continue to update you on any communications from NTC which may have bearing on the Vankor Outstanding Balance collection.

Sincerely,

Margaret B. McLean
Margaret McLean
Vice President and Chief Legal Officer

cc: William M. Barstow, III (VC Sellers Reserve LLC)
Michael R. Mills (Dorsey & Whitney, LLP)
Mark Allen
Edward J. Mysock, Jr. (Mysock & Chevaillier, L.L.P.)
Tammy Kerrigan
Catherine Norton Breman
Shannon West
Joseph M. Gaffney (Dorsey & Whitney, LLP)
Roger J. Chan
Donald W. McClintock III (Ashburn & Mason P.C.)
Peter Leathard
Keith Baldwin (Davis Wright Tremaine LLP)

COPYRIGHT 2008 BY CH2M HILL, INC. • COMPANY CONFIDENTIAL

Attachment to letter 501600-VC-NTC-LET-0911 dd 07 January 2008

Schedule A

Value of works performed and included into Acts of deliverables acceptance for June-November 2007, estimates of December 2007 and works associated with termination of the contract, incurred in January 2008

| # Акта | Value of work done for the month, USD | VAT, USD | Total, USD |
|---|---|---|---|
| 012 | $6,646,804.76 | $1,196,424.86 | $7,843,229.62 |
| 013 | $9,005,887.23 | $1,621,059.70 | $10,626,946.93 |
| 013/1 | $1,221,633.18 | $219,893.97 | $1,441,527.15 |
| 013/2 | $93,673.24 | $16,861.18 | $110,534.42 |
| 014 | $6,917,424.13 | $1,245,136.34 | $8,162,560.47 |
| 015 | $8,593,011.11 | $1,546,742.00 | $10,139,753.11 |
| 016 | $5,387,199.51 | $969,695.91 | $6,356,895.42 |
| 017 | $4,131,130.40 | $743,603.47 | $4,874,733.87 |
| 018 * | $3,862,484.00 | $695,247.12 | $4,557,731.12 |
| 019 ** | $500,000.00 | $90,000.00 | $590,000.00 |
| TOTAL | $46,359,247.56 | $8,344,664.56 | $54,703,912.12 |

* Note 1: Value of December 2007 works will be confirmed by the invoice, issued in the nearest future with supporting documents; includes value of work done up to December 22, 2007 inclusive.

** Note 2: Actual costs of demobilization according to article 16.1.3 of the Contract will be confirmed by supporting documents and billed in January 2008 invoice

Exhibit 4

# VANKOR ACCOUNTS RECEIVABLES

|  | October 10th Payment | November 26st Payment | Total |
|---|---|---|---|
| **Funds Received** | | | |
| Funds Paid | 10,026,075 | 5,718,833 | 15,744,908 |
| Amortization of Advance Payment | 1,243,605 | - | 1,243,605 |
| Total Proceeds | 11,269,680 | 5,718,833 | 16,988,513 |
| Less: VAT | (1,529,401) | (872,364) | (2,401,766) |
| Less: Retained by ECV | (383,425) | (212,261) | (595,686) |
| Subtotal - Funds Received | 9,356,853 | 4,634,208 | 13,991,061 |
| | | | |
| **Costs Incurred to Collect Payments** | | | |
| Labor Costs to Generate Work Product Required to Collect Receivables | | | (14,923,962) |
| Other Costs (e.g.travel) | | | (93,494) |
| Subtotal - Costs | | | (15,017,456) |
| | | | |
| Net Proceeds | | | (1,026,395) |

Note: All amounts in US$