

EXHIBIT **F**

EXHIBIT **F**



CH2M HILL

9191 South Jamaica Street
Englewood, CO 80112-5946
Tel 303.771.0900
Fax 720.286.9250

September 7, 2008

To:  The Parties Listed as Addressees on Schedule 1 hereto

c/o VC Sellers Reserve, LLC
Attn: William Barstow
911 West 8th Ave., Suite 201
Anchorage, AK 99501

Subject: Partial Release of Holdback Amount Net of Indemnification and Contingent Claims

Ladies and Gentlemen:

I am writing in connection with the Stock Purchase Agreement dated as of September 7, 2007 (the "SPA"), by and among CH2M HILL Companies Ltd., an Oregon corporation ("CH2M HILL"), each of the Persons listed on the signature pages thereto (each individually, a "Seller" and collectively, "Sellers") and VECO Corporation, a Delaware corporation ("VECO"). Capitalized terms used herein without definition have the same meanings as in the SPA unless the context clearly requires otherwise.

Pursuant to Section 2.5(b) of the SPA, CH2M HILL has agreed to release to the Sellers a portion of the Holdback Amount equal to $30,000,000, *"less any amounts then in dispute or subject to a contingent claim pursuant to Section 10.13 (Contingent Claims) or previously applied in respect of the indemnification obligations of Sellers and other obligations under"* the SPA.  As provided in Section 5.16(c) of the SPA, a portion of the Holdback Amount to be released (hereafter "2008 Holdback Release") will be paid to the Designated Persons and the remainder of the Holdback Amount to be released will be paid to Seller's Representative for remittance to the Sellers.  As previously instructed by you, that portion of the 2008 Holdback Release which is attributable to Tom Corkran (in his role as a Designated Person) will be paid to the Seller's Representative for remittance to Mr. Corkran.

This letter serves as a notice of several potential or contingent claims under Section 10.13 of the SPA that CH2M HILL anticipates will or may mature into Losses for which CH2M HILL is entitled to indemnification and which therefore are deducted from the 2008 Holdback Release pursuant to Sections 2.5(b) and 10.13 of the SPA.  In addition to estimated contingent claims for which deductions will be made, this letter summarizes other contingent claims the development of which we are monitoring and of which we would like for you to be aware, but for which we have decided not to make deductions from the 2008 Holdback Release.  Our decision not to withhold from the 2008 Holdback Release amounts due to these developing claims is based on the fact that  we anticipate the actual Losses will be relatively minor or we do not have concrete basis at this time for making a reasonable estimate of potential Loss, or otherwise.  We believe that our willingness to focus on what we think are reasonably probable,

rather than *maximum possible*, Losses for this purpose is a demonstration of our continuing desire to work in good faith with the Sellers in resolving these issues. Nevertheless, please understand that, notwithstanding the estimates of the amounts of the contingent claims for which deductions are being made, and notwithstanding CH2M HILL's election not to make the full deduction of potential Losses (or any deduction, in some cases), CH2M HILL fully reserves its rights to indemnification for the actual Losses incurred with respect to such matters from the amount of the Holdback Amount that will remain after the 2008 Holdback Release pursuant to Section 2.5(b) of the SPA.

Although we are making these contingent claims at this time for purposes of the 2008 Holdback Release, as provided in Section 2.5(b) of the SPA, the amounts so held will continue to earn interest for the Sellers together with the rest of the Holdback until and unless we make the actual claims against the Holdback based on amounts actually expended. At the appropriate time, when each potential or contingent claim is liquidated and finally determined, we will provide a formal notice of claim accompanied by appropriate documentation supporting the resulting charges against the Holdback Amount. To the extent that amounts now withheld exceed amounts necessary to satisfy these potential or contingent claims, they will be released to the Sellers and Designated Persons as soon as practicable.

Please rest assured that we are working diligently to address all the issues raised by the contingent claims and, while we cannot estimate at this time when all of them will be fully resolved, we are working to bring that resolution as soon as possible so the matters can be closed and amounts not released as part of the 2008 Holdback Release can be released to the Sellers and Designated Persons.

Following is a summary of the amounts and reasons for each deduction from the partial release of the Holdback Amount pursuant to Section 2.5(b) of the SPA:

## A.  Environmental Claims.

1.  <u>Air Permits in Deadhorse, AK</u>:

For at least ten years, up to and including the Closing Date under the SPA, VECO's operations located in Deadhorse have not held necessary air permits as a major source operator. The failure by VECO to hold these required permits as of the Closing Date is a breach of the representations and warranties set forth in Sections 3.15 (Compliance With Legal Requirements; Governmental Authorizations) and 3.20 (Environmental Matters) of the SPA for which CH2M HILL is entitled to indemnification under Section 10.2 of the SPA. CH2M HILL has worked diligently to apply for and receive appropriate air permits for the Deadhorse facilities. In addition, CH2M HILL determined that, by agreeing to certain operating restrictions, CH2M HILL was able to mitigate VECO's potential exposure for this violation by applying for minor source operator permits. The statutory maximum penalty that VECO is subject to for these violations prior to the issuance of the proper air permits is approximately $8.05 million. Although the estimated maximum Losses of over $8 million could be deducted from the partial release of the Holdback Amount at this time, our investigation has indicated that a more reasonably likely penalty is likely to be closer to $ 1 million, which is the amount being deducted from the partial release of the Holdback Amount pursuant to Section 2.5(b) of the SPA.

2. Waste Water Treatment Plant in Deadhorse, AK:

   a. Condition of Waste Water Treatment Plant: Prior to the Closing Date under the SPA, VECO was aware that the wastewater treatment plant at the Deadhorse facilities was at the end of its useful life and needed to be replaced. At the time of Closing under the SPA, VECO was engaged in discussions with the State of Alaska to extend the plant's permits while VECO studied and implemented possible replacement options, demonstrating that VECO was aware of the condition of the plant on the Closing Date. Yet, there was no accrual for this significant capital expense in the budgets or financial statements of VECO and no disclosure of it in the relevant schedules to the SPA. Because (i) the condition of the Deadhorse treatment plant was at end of life as of the Closing Date, and (2) replacement of the Deadhorse treatment plant was not reflected in VECO's maintenance and capital budgets as of the Closing Date, VECO breached the representation contained in Section 3.8 (Condition and Sufficiency of Assets) of the SPA. Based on the most recent construction bids received, CH2M HILL estimates that the cost of constructing the new treatment plant will be between $4.83 million and $5.7 million. At this time, we are electing to deduct the lower of this range, $4.83 million from the 2008 Holdback Release pursuant to Section 2.5(b) of the SPA.

   b. Dissolved Oxygen Levels: According to filings with the State of Alaska Department of Environmental Conservation ("ADEC") the Deadhorse waste water treatment plant has been out of compliance with dissolved oxygen requirements for the past ten years prior to and including the Closing Date. This condition represents a breach of both Section 3.15 (Compliance with Legal Requirements; etc.) and Section 3.20 (Environmental Matters) of the SPA for which CH2M HILL is entitled to indemnification under Section 10.2 of the SPA. While CH2M HILL currently estimates that the potential liability for fines for these pre-Closing violations are approximately $7.3 million (based on the stated fine levels of $5,000 per day) CH2M HILL's investigation suggests that $1 million is a more reasonably likely estimate of the amount of Losses, which is the amount being deducted from the 2008 Holdback Release pursuant to Section 2.5(b) of the SPA. CH2M HILL has now brought the waste water treatment plant into compliance with respect to tested and reported dissolved oxygen levels and no additional remediation expenses are expected to be incurred.

   c. Other Conditions: In addition, prior to the Closing under the SPA, the existing waste water treatment facility was not in compliance with other regulatory requirements, including treatment standards, and was being staffed by operators who lacked necessary certifications. These conditions represent breaches of Section 3.8 (Condition and Sufficiency of Assets), 3.15 (Compliance with Legal Requirements; etc.) and Section 3.20 (Environmental Matters) of the SPA for which CH2M HILL is entitled to indemnification under Section 10.2 of the SPA. CH2M HILL does not currently expect that the costs for curing these violations or any likely fines will be significant and is electing not to make any deduction from the 2008 Holdback Release pursuant to Section 2.5(b) of the SPA for this condition at this time. CH2M HILL nevertheless reserves its right to indemnification under the SPA for any Losses that may be incurred from this condition and, if appropriate, will make a claim against the Holdback Amount remaining after the partial release for such Losses.

3. Drinking Water at Deadhorse: Since 1997, the ADEC has issued VECO 93 notices of violation with respect to drinking water regulations for the Deadhorse Arctic Oilfield Hotel facility. As all of these notices related to failures to properly sample drinking water quality, the violations have been cured at nominal cost on a going forward basis by implementing

appropriate procedures for sampling the drinking water at this location. Nevertheless, these violations constitute a breach of both Section 3.8 (Condition and Sufficiency of Assets) and Section 3.20 (Environmental Matters) of the SPA for which CH2M HILL is entitled to indemnification under Section 10.2 of the SPA. Currently, CH2M HILL estimates that the reasonably likely liability for fines for these pre-Closing violations are approximately $100,000, which is what we are deducting from the 2008 Holdback Release pursuant to Section 2.5(b) of the SPA.

4.  Deadhorse Truck Washing Facility: Prior to the Closing date, the truck washing facility discharged waste water and contaminants directly onto the surrounding landscape in violation of applicable law. This condition represents a breach of Section 3.8 (Condition and Sufficiency of Assets), Section 3.15 (Compliance with Legal Requirements; etc.) and Section 3.20 (Environmental Matters) of the SPA for which CH2M HILL is entitled to indemnification under Section 10.2 of the SPA. Currently, CH2M HILL estimates that the costs for curing these violations by converting the truck washing facility to a zero discharge facility is approximately $100,000, which is what we are deducting from the 2008 Holdback Release pursuant to Section 2.5(b) of the SPA.

5.  Other Waste Disposal Issues at Deadhorse:

    a.  Hazardous Waste: At the time of Closing, the Deadhorse facilities were operating incorrectly as a "conditionally exempt small quantity generator," when, in fact, the facilities qualified as a "small quantity generator" and were therefore not in compliance with applicable law and regulations. In addition, the Deadhorse facility was not in compliance with legal requirements relating to "universal waste" at the time of Closing. This condition represents a breach of both Section 3.15 (Compliance With Legal Requirements; etc.) and Section 3.20 (Environmental Matters) of the SPA for which CH2M HILL is entitled to indemnification under Section 10.2 of the SPA. CH2M HILL does not currently expect that the costs for curing these violations or any likely fines will be significant and is electing not to make any deduction from the partial release of the Holdback Amount pursuant to Section 2.5(b) of the SPA for this condition at this time. CH2M HILL nevertheless reserves its right to indemnification under the SPA for any Losses that may be incurred from this condition and, if appropriate, will make a claim against the Holdback Amount when and if such Losses are incurred.

    b.  SPCC Regulations: At the time of Closing, the Deadhorse facilities were not in compliance with Spill Prevention, Control and Countermeasure ("SPCC") regulations with respect to oil storage facilities at that site. This condition represents a breach of Section 3.8 (Condition and Sufficiency of Assets), Section 3.15 (Compliance With Legal Requirements; etc.) and Section 3.20 (Environmental Matters) of the SPA for which CH2M HILL is entitled to indemnification under Section 10.2 of the SPA. CH2M HILL does not currently expect that the costs for curing these violations or any likely fines will be significant and is electing not to make any deduction from the 2008 Holdback Release pursuant to Section 2.5(b) of the SPA for this condition at this time. CH2M HILL nevertheless reserves its right to indemnification under the SPA for any Losses that may be incurred from this condition and, if appropriate, will make a claim against the Holdback Amount when and if such Losses are incurred.

6.  Oil Storage at the Kenai, AK Fabrication Shop: As of the Closing Date, the fabrication shop at Kenai was not in compliance with SPCC regulations with respect to oil storage facilities. This condition represents a breach of both Section 3.15 (Compliance With Legal Requirements; etc.) and Section 3.20 (Environmental Matters) of the SPA for which CH2M HILL is entitled to indemnification under Section 10.2 of the SPA. CH2M HILL does not

currently have an accurate detail of the costs for curing these violations and does not expect that any fines are likely; therefore, we are electing not to make any deduction from the 2008 Holdback Release pursuant to Section 2.5(b) of the SPA for this condition at this time. CH2M HILL nevertheless reserves its right to indemnification under the SPA for any Losses that may be incurred from this condition and, if appropriate, will make a claim against the Holdback Amount when and if such Losses are incurred.

**As a result of the foregoing potential and contingent environmental claims, CH2M HILL is reducing the 2008 Holdback Release by the aggregate total of $7.03 million of estimated costs and liabilities.** As discussed above, the foregoing amounts are only our good faith estimates made in connection with determining the deductions from the 2008 Holdback Release. CH2M HILL reserves it rights to full indemnification under the SPA for all Losses that may be incurred in connection with these matters and, if appropriate, will make additional claims against the Holdback Amount remaining after the 2008 Holdback Release, if and when the extent of the Losses is fully known and assuming the Losses exceed the estimates provided herein. In addition, any internal costs that constitute indemnified Losses and that CH2M HILL incurs in connection with these environmental conditions will continue to be claimed against the Holdback Amount as they become known.

## B.  Tax Claims.

1. The Terry Draeger Report (previously used as the basis for the IRS settlement for tax years 2004 and 2005, and hereafter referred to as the "Draeger Report") will now be used as the basis for IRS settlement for the tax years 2006 and 2007. The Draeger Report identifies several inappropriate deductions previously claimed for tax years 2006 and 2007. These inappropriate deductions constitute a breach of Section 3.11 (No Undisclosed Liabilities) and Section 3.12 (Taxes) of the SPA for which CH2M HILL is entitled to indemnification under Section 10.2 of the SPA. Based on the Draeger Report, we estimate that additional tax of $580,000 will be due, with penalties and interest of approximately $120,000. Therefore, we are deducting $700,000 from the 2008 Holdback Release pursuant to Section 2.5(b) of the SPA.

2. VECO filed its 3/31/2007 federal income tax request for extension without proper tax remittance (Form 7004). Based on statutory penalties, we believe that it is highly probable that the IRS will assess penalties in the amount of approximately $2.8 million (including interest). This failure to remit taxes due constitutes a breach of Section 3.11 (No Undisclosed Liabilities) and Section 3.12 (Taxes) of the SPA for which CH2M HILL is entitled to indemnification under Section 10.2 of the SPA. We are deducting anticipated statutory penalties and interest of $2.8 million from the 2008 Holdback Release pursuant to Section 2.5(b) of the SPA.

3. Based on the IRS exam results and the comments made by the examining agent in July 2008, for federal filing years 3/31/2006, 3/31/2007 and 9/7/2007 we expect a review of selected officers' expense reports to result in the disallowance of the deductions. These disallowances, if asserted, will constitute a breach of Section 3.11 (No Undisclosed Liabilities) and Section 3.12 (Taxes) of the SPA for which CH2M HILL is entitled to indemnification under Section 10.2 of the SPA. Based on the exam results from prior years, we estimate this to be $250,000 of additional taxes and $30,000 of interest, for which we are deducting an aggregate amount of $280,000 from the 2008 Holdback Release pursuant to Section 2.5(b) of the SPA.

**All of these tax liabilities are above the Tax Threshold amount, and thus we are claiming a total contingent amount of $3.78 million against the 2008 Holdback Release.** CH2M HILL continues to monitor additional taxes that may have to be paid for VECO's pre-Closing tax periods and we will be in communication with you as these liabilities become more certain.

**C.  Other Claims.**

1.  <u>VECO Alaska Building, 36th Avenue, Anchorage, AK</u>:

    a.  <u>Replacement of Domestic Water Piping Supplying all Core Building Restrooms</u>:  At the time of Closing, the domestic water piping in the VECO Alaska Building was significantly corroded, inadequate for its intended use and in need of replacement for several years.  This condition, which was not disclosed to CH2M HILL prior to Closing, represents a breach of Section 3.8 (Condition and Sufficiency of Assets) of the SPA for which CH2M HILL is entitled to indemnification under Section 10.2 of the SPA.  CH2M HILL currently estimates that the costs for replacing the piping will be approximately $184,000, which we are deducting from the 2008 Holdback Release pursuant to Section 2.5(b) of the SPA.

    b.  <u>Repair and Upgrade of Elevators</u>:  At the time of Closing, the elevator systems serving the VECO Alaska Building were out of compliance with applicable building code requirements and VECO had received notice of this condition from the Municipality of Anchorage, Building Safety Division - Elevator Inspections during May, 2007 prior to the Closing Date.  This notice was not disclosed by the Sellers to CH2M HILL.  This condition represents a breach of Section 3.15 (Compliance With Legal Requirements; etc.) of the SPA for which CH2M HILL is entitled to indemnification under Section 10.2 of the SPA.  CH2M HILL currently estimates that the costs for bringing the effected elevators and systems into compliance with the building code will be approximately $470,000.  We have immediate plans to spend at least $235,000 to repair this condition and we are deducting this amount from the 2008 Holdback Release pursuant to Section 2.5(b) of the SPA.

2.  <u>Legal Fees Incurred in Connection with Government Investigations</u>:  Since Closing, CH2M HILL estimates that we have incurred approximately $1,020,000 in legal fees in connection with the steps we have taken to respond to the Alaska state and federal political corruption, tax fraud and other allegations including the federal government's investigation of Senator Ted Stevens.  All these matters arise from or are in connection with illegal activities engaged in by VECO's officers and employees prior to Closing.  In addition, CH2M HILL estimates that additional legal fees of at least $100,000 will be incurred on behalf of CH2M HILL (former VECO) employees in connection with Ted Stevens' pending trial.  Pursuant to the SPA, all liabilities related to criminal activities of VECO and its executives and employees prior to Closing are Retained Liabilities of the Sellers and, pursuant to Section 10.2 of the SPA, CH2M HILL is entitled to indemnification for all Losses, including reasonable legal fees, incurred by CH2M HILL in connection with the Retained Liabilities.  Accordingly, we are deducting $1,120,000 from the amount of the 2008 Holdback Release in respect of these claims.

**As a result of the foregoing potential and contingent claims, an aggregate total of $1,774,000 of estimated external costs and liabilities has been deducted by CH2M HILL from the 2008 Holdback Release.** As discussed above, the foregoing amounts are only our good faith estimates made in connection with determining the deductions from the 2008

Holdback Release. CH2M HILL reserves it rights to full indemnification under the SPA for all Losses that may be incurred in connection with these matters and, if appropriate, will make additional claims against the Holdback Amount remaining after the 2008 Holdback Release to the extent such Losses exceed the estimated Losses set forth above. In addition, any internal costs that constitute indemnified Losses and that CH2M HILL incurs in connection with these conditions will continue to be claimed in accordance with our past practices.

**The total aggregate amount of all withholdings from the 2008 Holdback Release for all potential and contingent liabilities of which CH2M HILL is currently aware is $12,584,000.**

### D.  Holdback Claims Previously Made.

As we have previously communicated to you, an aggregate total of $5,384,124.64, representing liquidated claims for which CH2M HILL is entitled to indemnification pursuant to Section 10.2 of the SPA has previously been deducted by CH2M HILL from the Holdback Amount. Accordingly, in accordance with Section 2.5(b) of the SPA, such amount has been deducted from the partial release of the Holdback Amount in respect of the foregoing indemnification amounts previously applied by CH2M HILL.

### E.  Net Reduction of Holdback Release and Payments Due.

The net effect of these contingent claims and amounts applied to date in respect of indemnification is $17,968,124.64, (i.e. 12,584,000 plus $5,384,124.64) resulting in a net 2008 Holdback Release pursuant to Section 2.5(b) of $12,031,875.35 (i.e. $30,000,000 minus $17,968,124.64). Although interest with respect to any Holdback Amounts is not due until December 1, 2008, to keep matters straight forward, our payment to you includes interest for the amount of 2008 Holdback Release from the date when the interest was most recently paid until today.

To summarize:
- The total amount of Holdback released today is $12,031,875.36
- Interest with respect to amounts released through 9/08/08 is $7,397.13
- Total Payment made today is $12,039,272.49
- Amount wired to the Sellers: $11,587,799.77
- Amount due to "Designated Persons": $150,490.90 to each of Ken Marzocco, Rene Massinon and Chuck O'Donnell (Total $451,472).

If you have any questions regarding this matter, please feel free to contact us at Keith.Mullineaux@ch2m.com or call me at 720-286-2501 or Margaret.McLean@ch2m.com or 720-286-2236.


Sincerely,
CH2M HILL


Keith Mullineaux

Margaret McLean


cc:
Cabot Christianson
Christianson & Spraker
911 West 8th Ave, Suite 201
Anchorage, AK 99501

**Schedule 1**
**Addresses of Sellers Pursuant to Section 12.4 of the SPA**

Sellers:

VC Sellers Reserve LLC
911 West 8th Avenue, Suite 201
Anchorage, Alaska 99507
Attention: William M. Barstow, III
Facsimile No.: (907) 258-2026
Email address: wbarston@gci.net

with a copies to:

For Bill Allen:
Dorsey & Whitney, LLP
1031 West 4th Avenue, Suite 600
Anchorage, Alaska 99501
Attention: Michael R. Mills
Facsimile No: +1-(907) 276-4152
Email address: mills.mike@dorsey.com

Mark Allen
610 S. Main Street
Roswell, NM 88203
Facsimile No.: 505-622-6193
Email address: markandpeggyallen@hotmail.com

with a copy to:

Mysock & Chevaillier, L.L.P.
Suite 700, 2021 South Lewis
Tulsa, Oklahoma 74104
Attention: Edward J. Mysock, Jr.
Facsimile No.: 1-918-747-6299
Email address: ejm@mychev.com

Tammy Kerrigan
TTK Enterprises, Inc.
863 Colorado Avenue
Grand Junction, Colorado 81501
Facsimile No.: 970-245-0624
Email address: Kerrigan2296@hotmail.com

with a copy to:

Catherine Norton Breman
TTK Enterprises, Inc.
863 Colorado Avenue
Grand Junction, Colorado 81501
Facsimile No: +1-(970) 241-3760
Email address:

Shannon West
3504 Loomis Trail Road
Blaine, WA 98230
Facsimile No.: 360-332-6485
Email address: ssw221@hotmail.com

with a copy to:

Joseph M. Gaffney
Dorsey & Whitney LLP
1420 Fifth Avenue, Suite 3400
Seattle, Washington 98101
Facsimile No.: 206-903-8820
Email address: gaffney.joe@dorsey.com

For Roger Chan
Roger J. Chan
4820 Sportsman Drive
Anchorage, Alaska 99502-4104

with a copy to:

Ashburn & Mason P.C.
1227 West 9th Avenue, Suite 200
Anchorage, Alaska 99501-5914
Attention: Donald W. McClintock III
Facsimile No: +1-(907) 277-8235
Email address: dwm@anchorlaw.com

For Peter Leathard:
Peter Leathard
2026 Crataegus Circle
Anchorage, Alaska 99508

with a copy to:

Davis Wright Tremaine LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101-3045
Attention: Keith Baldwin
Facsimile No.: +1-(206) 757-7008
Email address: keithbaldwin@dwt.com

# Veco Holdback - Distribution of Payments

| | Interest 12/1/2007 | Interest 3/1/2008 | Interest 6/1/2008 | Interest 9/1/2008 | Interest 9/7/2008 | Release 9/7/2008 | Total |
|---|---|---|---|---|---|---|---|
| **Total Interest/Release Paid** | $ 1,123,381.56 | $ 963,174.28 | $ 677,724.60 | $ 715,199.67 | $ 7,397.13 | $ 12,031,875.36 | $ 15,518,752.60 |
| **Interest/Release Due** | | | | | | | |
| Sellers 95.00% | $ 1,067,212.48 | 915,015.57 | 643,838.37 | 679,439.69 | 7,027.27 | 11,430,281.59 | $ 14,742,814.97 |
| Ken Marzocco 1.25% | 14,042.27 | 12,039.68 | 8,471.56 | 8,940.00 | 92.46 | 150,398.44 | $ 193,984.41 |
| Rene Massinon 1.25% | 14,042.27 | 12,039.68 | 8,471.56 | 8,940.00 | 92.46 | 150,398.44 | $ 193,984.41 |
| Chuck O'Donnell 1.25% | 14,042.27 | 12,039.68 | 8,471.56 | 8,940.00 | 92.46 | 150,398.44 | $ 193,984.41 |
| Tom Corkran 1.25% | 14,042.27 | 12,039.68 | 8,471.56 | 8,940.00 | 92.46 | 150,398.44 | $ 193,984.41 |
| 100.00% | | | | | | | |
| **Interest/Release Actually Paid** | | | | | | | |
| Sellers | $ 1,123,381.56 | 963,174.28 | 539,510.58 | 679,439.69 | 7,027.27 | 11,430,281.59 | $ 14,742,814.97 |
| Ken Marzocco | | | 34,553.51 | 8,940.00 | 92.46 | 150,398.44 | $ 193,984.41 |
| Rene Massinon | | | 34,553.51 | 8,940.00 | 92.46 | 150,398.44 | $ 193,984.41 |
| Chuck O'Donnell | | | 34,553.51 | 8,940.00 | 92.46 | 150,398.44 | $ 193,984.41 |
| Tom Corkran | | | 34,553.51 | 8,940.00 | 92.46 | 150,398.44 | $ 193,984.41 |
| Sellers + Corkran | $ 1,123,381.56 | 963,174.28 | 574,064.08 | 688,379.68 | 7,119.74 | 11,580,680.03<br>11,587,799.77 | |

# VECO Holdback Release 9-07-2008

## Contingent Claims at 9-07-2008

| Date of Charge | ID # | Description | Vendor/Source | Amount US$ | Paid By | Date Seller Notified | Backup Acquired | Local Currency Amount | Exchange Rate | Currency | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|
| TBD | A | Air Permits in Deadhorse, AK | | 1,000,000.00 | | 9/8/2008 | | | | | |
| TBD | B | Waste Water treatment plant in Deadhorse, AK replacement | | 4,830,000.00 | | 9/8/2008 | | | | | |
| TBD | C | Dissolved Oxygen levels at Deadhorse waste water treatment plant | | 1,000,000.00 | | 9/8/2008 | | | | | |
| TBD | D | Drinking water quality sampling - Deadhorse Arctic Oilfield Hotel | | 100,000.00 | | 9/8/2008 | | | | | |
| TBD | E | Deadhorse truck washing facility discharge violations | | 100,000.00 | | 9/8/2008 | | | | | |
| TBD | F | Replacing domestic water supply piping at Veco Alaska Building | | 184,000.00 | | 9/8/2008 | | | | | |
| TBD | G | Repair and upgrade of elevataors at Veco Alaska Building | | 470,000.00 | | 9/8/2008 | | | | | |
| TBD | H | Legal fees incurred in connection with Governmental Investigations | | 1,120,000.00 | | 9/8/2008 | | | | | |
| TBD | I | Various additional taxes, interest and penalties | IRS | 3,780,000.00 | | 9/8/2008 | | | | | |
| | | | Total Contingent Claims | 12,584,000.00 | | | | | | | |
| | | | Claims as of 9/7/2008 | 5,384,124.64 | | | | | | | |
| | | | Total Combined Claims | 17,968,124.64 | | | | | | | |
| | | | Sept 7, 2008 Maximum Release | 30,000,000.00 | | | | | | | |
| | | | Net Amount to be Released | 12,031,875.36 | | | | | | | |
| | | | Applicable Rate - Sep, 1, 2008 | 3.7400% | | | | | | | |
| | | | Number of Days at Sept 7 Rate | 6 | | | | | | | |
| | | | Interest Due - Sep 1 - Sep 7 | 7,397.13 | | | | | | | |
| | | | Total Release with Interest | 12,039,272.49 | | | | | | | |
| | | | Remaining Holdback after Sept 7 | 52,584,000.00 | | | | | | | |

Veco Holdback Summary

| Period Start | Period End | Starting Holdback | Claims Made | Adjustments/ Releases | Ending Holdback | Interest Rate | Interest Paid | Comments |
|---|---|---|---|---|---|---|---|---|
| September 7, 2007 | December 3, 2007 | $ 70,000,000.00 | $ 992,559.85 | $ 13,394.07 | $ 69,020,834.22 | 7.0738% | $ 1,123,381.56 | |
| December 3, 2007 | March 1, 2008 | $ 69,020,834.22 | $ 7,763,455.79 | $ (13,394.07) | $ 61,243,984.36 | 4.3913% | $ 963,174.28 | |
| March 1, 2008 | June 1, 2008 | $ 61,243,984.36 | $ 13,854.52 | | $ 61,230,129.84 | 4.3913% | $ 677,724.60 | |
| June 1, 2008 | September 1, 2008 | $ 61,230,129.84 | $ (3,385,745.52) | | $ 64,615,875.36 | 4.3913% | $ 7,397.13 | |
| September 1, 2008 | September 7, 2008 | $ 64,615,875.36 | | $ (12,031,875.36) | $ 52,584,000.00 | 4.3913% | | |
| September 7, 2008 | December 1, 2008 | $ 52,584,000.00 | | | | 3.7400% | | |